UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JIN ZHU,

               Plaintiff,

               v.

NORTH CENTRAL EDUCATIONAL
SERVICE DISTRICT - ESD 171,

               Defendant.

NO. 2:15-CV-00183-JLQ

ORDER RE: MOTION FOR
JUDGMENT AS A MATTER OF
LAW OR, IN THE ALTERNATIVE,
MOTION FOR A NEW TRIAL

## I.    Introduction/Summary of the Case

On December 7, 2015, Plaintiff filed an Amended Complaint in this federal court alleging several claims against Defendant North Central Educational Service District - ESD 171 ("ESD 171") based on both state and federal law. *See* (ECF No. 19 at 13-19).

On August 22, 2016, the court issued a Memorandum Opinion and Order re: Motions of Summary Judgment. (ECF No. 74). In the Memorandum Opinion, the court dismissed all of Plaintiff's federal claims based on 42 U.S.C. § 1981, dismissed the Washington Law Against Discrimination ("WLAD") disparate impact claim, dismissed the WLAD retaliation claim based on the Refurbishment Assistant position, and found ESD 171 violated the Washington Public Records Act. (ECF No. 74 at 38). ESD 171 did not raise the issue of the scope of the WLAD retaliation statute in its Motion for Summary Judgment or Reply thereto. The dismissal of the federal claims left pending only state law claims. The Defendant did not then move to dismiss this action based upon lack of federal court jurisdiction. The court exercised its discretion pursuant to 28 U.S.C. 1367 and retained supplemental jurisdiction of the remaining state law claims in view of

ORDER - 1

the history of the case and the impending trial date.

On August 29, 2016, ESD 171 filed a Motion for Reconsideration of the summary judgment rulings wherein ESD 171 argued a Washington Court of Appeals case, *Malo v. Alaska Trawl Fisheries, Inc.*, 92 Wn. App. 927 (1998), held WLAD retaliation claims can only be brought against an employer, not prospective employers. The court denied the Motion, citing to other cases holding retaliation claims can be brought outside of the employer-employee relationship. (ECF No. 93 at 27). ESD 171 also moved to dismiss the retaliation claim through an objection to Plaintiff's proposed jury instructions and a Motion in Limine Reply brief, which the court denied as an improper attempt to seek dismissal of a claim. *See* (ECF No. 67 at 8-11); (ECF No. 62 at 10-11); (ECF No. 93 at 27). That the "employer/employee" issue was clearly before the court is evidenced by the courts discussion and ruling in the Pretrial Order (ECF 93 @ 27).

On September 12, 2016, this matter proceeded to jury trial on the following claims: (1) WLAD retaliation based on the failure to hire Plaintiff for the Math-Science Specialist position; (2) WLAD race discrimination based on the failure to hire Plaintiff for the Math-Science Specialist position; (3) WLAD race discrimination based on the failure to hire Plaintiff for the Refurbishment Assistant position; and (4) blacklisting claim.

After Plaintiff rested his case-in-chief, counsel for ESD 171 moved "to dismiss the blacklisting claim, the discrimination claim, and the retaliation claim." (ECF No. 133 at 3). Regarding the retaliation claim, counsel explained: "there is just no evidence to support that any of the decision-makers were motivated by the dispute between Mr. Zhu and the Waterville School District." (ECF No. 133 at 5-6). Thereafter, counsel misspoke in stating: "[a]nd particularly with regards [sic] to the refurbishment claim." (ECF No. 133 at 6). The court reminded counsel the Refurbishment Assistant retaliation claim "went out in summary judgment" and counsel acknowledged his mistake. (ECF No. 133 at 6). The court dismissed the blacklisting claim but allowed the other claims to proceed. No other argument or discussion was presented on the retaliation claim at that point.

Upon both parties resting, the court raised, *sua sponte*, the issue of whether there was sufficient evidence on the race discrimination claims to proceed to jury deliberation. (ECF No. 122 at 3-4). After a discussion between Plaintiff's counsel and the court, the court addressed the retaliation claim: "[a]nd I also have questions, not as serious, as to the sufficiency of the evidence on the retaliation claim." (ECF No. 122 at 7-8). The court asked counsel "[w]hat evidence is there that his lawsuit and claim against Waterville played any role in the Math/Science?" (ECF No. 122 at 8).

After Plaintiff's counsel addressed the court's questions, counsel for ESD 171 stated "[i]t's at this point that I was going to make a directed verdict motion around those same issues, Your Honor." (ECF No. 122 at 9). Counsel continued, "[s]o to follow up, I think the answer you just heard is the evidence that there is no evidence. Because they don't point you to any evidence that this jury could do any more than speculate on." (ECF No. 122 at 9). Defense counsel also explained: "[t]here's ample evidence in the record to support the decision that was made by the committee. And, by the way, three of the committee members said they knew nothing about the Waterville incident. The only one that had read an article was Ms. Reister. So there just simply is -- There's no evidence or reasonable inference from any of the evidence that gets them there. And it just lets the jury speculate in this case. Not only speculate, speculate against clear, unrebutted denial." (ECF No. 122 at 10).

Regarding ESD 171 Superintendent Dr. Richard McBride's role in the process, counsel acknowledged he was the ultimate decision-maker but argued "Dr. McBride didn't make the decision. The Hiring Committee made the decision... It would be different if they had recommended Mr. Zhu and then Dr. McBride had redone that or if there was some other evidence that he influenced the process, but there isn't." (ECF No. 122 at 11). At the conclusion of argument, the court denied the motion to dismiss the retaliation and discrimination claims. (ECF No. 122 at 12-13).

On September 16, 2016, the jury returned a verdict finding for ESD 171 on the WLAD race discrimination claims, but found for Plaintiff on the WLAD retaliation

claim. *See* (ECF No. 114). The jury awarded Plaintiff "$450,000 + legal fees" on the WLAD retaliation claim. (ECF No. 114 at 1).

On October 5, 2016, ESD 171 filed a Motion for Judgment as a Matter of Law Or, in the Alternative, Motion for a New Trial. (ECF No. 136). Plaintiff filed a Response. (ECF No. 146). ESD 171 filed a Reply. (ECF No. 147).

On December 7, 2016, the court heard oral argument on Plaintiff's Motion for Adverse Tax Consequences, Prejudgment Interest, and Attorneys' Fees and Costs (ECF No. 125) and ESD 171's Motion (ECF No. 136). Plaintiff was represented by Matthew Crotty and Michael Love. ESD 171 was represented by Jerry Moberg and James Baker. The matter was taken under submission. This Order memorializes the court's rulings on ESD 171's Motion.

## II.    Discussion

### A.    Standard of Review

#### 1.    Fed.R.Civ.P. 50

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue," Fed.R.Civ.P. 50(a) provides the court may "resolve the issue against the party; and grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." If the court does not grant judgment as a matter of law under Fed.R.Civ.P. 50(a), "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed.R.Civ.P. 50(b). "No later than 28 days after the entry of judgment... the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed.R.Civ.P. 50(b).

In considering a motion brought under Fed.R.Civ.P. 50, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.*,

530 U.S. 133, 150 (2000); *Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2005) (stating the court "must view the evidence in the light most favorable to the nonmoving party... and draw all reasonable inferences in that party's favor"). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs*, 443 F.3d at 1062.

A post-trial Fed.R.Civ.P. 50(b) motion "is not a freestanding motion" but is "a renewed Rule 50(a) motion." *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009). The post-trial motion "is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." (*Id.*). In other words, "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Feund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003). "However, Rule 50(b) 'may be satisfied by an ambiguous or inartfully made motion' under Rule 50(a)." *Go Daddy Software*, 581 F.3d at 961 (quoting *Reeves v. Teuscher*, 881 F.2d 1495, 1498 (9th Cir. 1989)). "Absent such a liberal interpretation, the rule is a harsh one." *Go Daddy Software*, 581 F.3d at 961 (quotation marks and citation omitted).

A jury verdict will be upheld unless it is not supported by substantial evidence. *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 888 (9th Cir. 2002). However, if the post-trial motion is based on "grounds not previously asserted in a Rule 50(a) motion" the plain error standard applies and the jury verdict will only be overturned "if such plain error would result in a manifest miscarriage of justice." *Go Daddy Software*, 581 F.3d at 961 (quoting in part *Janes*, 279 F.3d at 888).

An issue of law denied in summary judgment proceedings may be re-raised in a Fed.R.Civ.P. 50 motion. *See Frank C. Pollara Group, LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 185-86 (3d Cir. 2015); *Feld v. Feld*, 688 F.3d 779, 782 (D.C. Cir. 2012); *Unishippers Global Logistics, LLC v. DHL Exp. (USA), Inc.*, 526 Fed. Appx. 899, 905 n.2 (10th Cir. 2013) (unpublished) (finding the party "properly renewed its motion for summary judgment in a Rule 50(b) motion"). However, even if a pure issue of law is not

re-raised in a Fed.R.Civ.P. 50 motion, the issue of law is appealable from the denial of summary judgment. *See Feld*, 688 F.3d at 781-83.

### 2.    Fed.R.Civ.P. 59

The court may grant a new trial "on all or some of the issues ... for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A). Additionally, "[a]fter giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion." Fed.R.Civ.P. 59(d).

Because Fed.R.Civ.P. 59 does not specify the grounds to grant a new trial, the court is "bound by those grounds that have been historically recognized." *Zhang v. American Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). The Ninth Circuit holds a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

## B.    Procedural Issues

As an initial matter, Plaintiff argues the court should hold ESD 171 to a strict standard relating to the content of the oral motion brought under Fed.R.Civ.P. 50(a). Plaintiff cited *Janes* for the broad proposition the Ninth Circuit construes all requirements of Fed.R.Civ.P. 50 strictly. (ECF No. 146 at 3). This statement is misleading, because in *Janes*, the Ninth Circuit addressed the strict requirement of a party to make a Rule 50 motion prior to submission of the case to the jury. *See Janes*, 279 F.3d at 886-87. The Ninth Circuit employs a liberal interpretation of the content of Rule 50(a) motions and ambiguous or inartful oral motions are sufficient. *See Go Daddy Software*, 581 F.3d at

961. The cases Plaintiff cited from other circuits regarding specificity are not relevant because the Ninth Circuit has taken this broad interpretation for the specificity required in an oral Rule 50(a) motion.

Plaintiff argues ESD 171's Rule 50 Motion should be denied because it failed to specify the basis of its Rule 50(a) Motion during trial and because the post-trial Motion raises new arguments. (ECF No. 146 at 3-6). Plaintiff **first** argues the oral motion at trial lacked the required level of specificity because counsel for ESD 171 did not "cite *the law* and *facts*" in support of his motion. (ECF No. 146 at 4) (emphasis in original). **Second**, Plaintiff argues counsel for ESD 171 sought dismissal of the retaliation claim based on the Refurbishment Assistant position, not the Math-Science Specialist position. (ECF No. 146 at 4). **Third**, Plaintiff argues ESD 171 failed to renew its motion for dismissal of the retaliation claim at the close of all evidence. (ECF No. 146 at 5).

A review of the transcript shows counsel for ESD 171 articulated the alleged lack of evidence supporting the retaliation claim. Counsel specifically moved to dismiss the retaliation claim and argued "there is just no evidence to support that any of the decision-makers were motivated by the dispute between Mr. Zhu and the Waterville School District." (ECF No. 133 at 5-6). When counsel renewed the motion before jury deliberations, he re-asserted the lack of evidence to support of the retaliation claim. *See* (ECF No. 122 at 9-10).

Plaintiff argues the oral motions did not "put Plaintiff on notice that Plaintiff legally and factually had to establish that all four panelists (a) possessed knowledge of Plaintiff's race discrimination lawsuit against Waterville School District, (b) agreed to make up a story about the selected applicant Andrew Hickman's performance in the interview, (c) used the Waterville lawsuit as a substantial factor to not hire Plaintiff and (d) 'then came to court and lied about it.'" (ECF No. 146 at 5). This argument is based on a rigid and literal reading of counsel's oral motions. Counsel for ESD 171 did not use the same wording or expanded argument in his oral motions present in the post-trial Fed.R.Civ.P. 50(b) Motion. However, the oral motions clearly argued the lack of

evidence establishing the Waterville lawsuit as a substantial factor in the decision not to hire Plaintiff. Implicit in the substantial factor element is some sort of knowledge of the protected activity. If no one on the panel was aware of the lawsuit, it would be impossible for their recommendation to based in any part on Plaintiff's prior lawsuit.

Plaintiff's theory of the case necessarily implies the panelists made up a story about Hickman, the successful applicant for the Math-Science Specialist position, and committed perjury in court. Defense counsel pointed this out during closing argument to the jury. It would be unreasonable to require counsel to explicitly state each and every argument and implication of their argument in an oral motion made in the course of trial. The Ninth Circuit does not require such strictness in the form and substance of the Fed.R.Civ.P. 50(a) motion, and such a rule as Plaintiff proposed this court impose on ESD 171 is a "harsh one." *See Go Daddy Software*, 581 F.3d at 961. While ESD 171 did not cite particular cases to support its oral motion, counsel's oral motion met the requirements of Fed.R.Civ.P. 50(a) and Plaintiff's first argument fails.

Plaintiff's second argument also fails. Plaintiff attempts to bind counsel for ESD 171 for mistakenly referencing the Refurbishment Assistant retaliation claim. It is clear counsel meant the Math-Science Specialist position, because he acknowledged his mistake when the court brought his attention to the fact the Refurbishment Assistant retaliation claim was dismissed on summary judgment. *See* (ECF No. 133 at 6). It would be unreasonable to find counsel failed to move for dismissal of the Math-Science retaliation claim based on this one statement in light of the context surrounding the claim.

Plaintiff's final argument takes one statement of counsel and argues ESD 171 only renewed its Fed.R.Civ.P. 50(a) Motion on the discrimination claim, and not the retaliation claim. Counsel for ESD 171, in the portion cited by Plaintiff, stated "I think properly the discrimination claim should be dismissed at the conclusion of the case." (ECF No. 122 at 11). However, Plaintiff ignores the fact counsel had already moved for dismissal "around those same issues" stated directly after the court's discussion with Plaintiff's counsel about the retaliation claim. *See* (ECF No. 122 at 9). Additionally, counsel for ESD 171

specifically argued the absence of evidence showing the interview panelists knew of and were motivated by Plaintiff's lawsuit against Waterville School District. *See* (ECF No. 122 at 10).

For all of the above reasons, the court rejects Plaintiff's procedural arguments and finds ESD 171 moved for dismissal of the retaliation claim based on the Math-Science Specialist position in the summary judgment proceedings, renewed the motion before the jury deliberated, and has not waived arguments regarding the sufficiency of the evidence to support the Math-Science Specialist position retaliation claim.

## C.    WLAD Retaliation Claims

ESD 171's post-trial Motion presented the legal argument that WLAD does not establish a cause of action for failure to hire claims against prospective employers by job applicants based on the applicant's prior opposition to race discrimination against a different employer. (ECF No. 136 at 13-15). ESD 171 argues the case law addressing RCW 49.60.210(1) does not provide protection to job applicants against different prospective employers. (ECF No. 136 at 14-15). Additionally, ESD 171 asserts the legislative history of the 1985 amendment to RCW 49.60.210(1) does not show an intent to expand a cause of action to persons applying for jobs with subsequent employers. (ECF No. 136 at 15-17). Lastly, ESD 171 argues other jurisdictions with similar statutes hold there is no cause of action for a job applicant against a prospective employer. (ECF No. 136 at 19-24).

Plaintiff argues the court has already heard and rejected the first argument in the Motion for Summary Judgment, in the Motion for Reconsideration, and the Pretrial Order (ECF No. 93). (ECF No. 146 at 22). Citing Title VII of the Civil Rights Act of 1964, Plaintiff asserts WLAD retaliation protections extend to prospective employees against subsequent employers. (ECF No. 146 at 24). Plaintiff also asserts the cases ESD 171 cites from other jurisdictions are "either not controlling, factually distinguishable, or legally distinguishable, or all three." (ECF No. 146 at 23).

As an initial matter, Plaintiff is in part correct regarding when the retaliation

standing issue was first raised. The instant Motion is the first time ESD 171 addressed the retaliation standing cases cited by the court in denying reconsideration of summary judgment and in the Pretrial Order. Herein, ESD 171 argues no Washington case has found a viable retaliation claim where the opposition to discrimination and retaliation did not occur within the same employment relationship.

Because ESD 171 did not raise this legal issue in its oral Fed.R.Civ.P. 50(a) motion, ESD 171 must show clear error to obtain judgment as a matter of law on this issue to prevent a miscarriage of justice. *See Go Daddy Software*, 581 F.3d at 961. Alternatively, the court could treat this argument as a motion for reconsideration which would also apply the clear error standard. *See Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). In any event, because this is a pure legal issue, ESD 171 can appeal the court's denial of summary judgment on this issue. *See Feld*, 688 F.3d at 781-83.

Despite Plaintiff's urging, the court finds it reasonable to consider the merits of ESD 171's argument. Whether RCW 49.60.210(1) provides a cause of action under the facts of this case is an open question under Washington law and one ESD 171 has now fully briefed.

ESD 171 requests the court to "revisit its ruling on summary judgment" and "utilize the summary judgment analysis in deciding whether to grant [ESD 171] judgment as a matter of law." (ECF No. 136 at 31, 34). ESD 171 cited no authority for this and the court finds no reason to reconsider summary judgment or use those standards in considering this Motion. Accordingly, the court will not use the *McDonnell-Douglas* burden-shifting framework.

### 1.    RCW 49.60.210(1)

The statute at issue states: "[i]t is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person because he or she has opposed any practices forbidden by this chapter, or because he or she has filed a charge, testified, or assisted in any proceeding under this

chapter." RCW 49.60.210(1). WLAD defines "employer" as "includes any person acting in the interest of an employer, directly or indirectly, who employs eight or more persons, and does not include any religious or sectarian organization not organized for private profit." RCW 49.60.040(11).

ESD 171 focuses on "or other person" and argues the phrase does not include prospective employers nor was ever intended to do so. *See* (ECF No. 136 at 14-15). Plaintiff argues ESD 171 is an "employer" and the statute includes protection for individuals against retaliation by prospective employers for protected activity against former employers. (ECF No. 146 at 24).

The Washington Supreme Court has cited RCW 49.60.210 on only eight occasions. *See Ellis v. City of Seattle*, 142 Wn.2d 450, 460 (2000); *Marquis v. City of Spokane*, 130 Wn.2d 97, 121 n.4 (1996); *Sherman v. State*, 128 Wn.2d 164, 202-03 (1995); *Allison v. Housing Authority of City of Seattle*, 118 Wn.2d 79 (1991); *Bennett v. Hardy*, 113 Wn.2d 912, 925 (1990); *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 106 Wn.2d 901, 906-07 (1986); *Washington Water Power Co. v. Washington State Human Rights Commission*, 91 Wn.2d 62, 71 (1978); *Long v. Brusco Tug & Barge, Inc.*, 185 Wn.2d 127, 139 (2016) (Gonzalez, J., dissenting). In only two cases did the court engage in an analysis under the statute. *See Allison*, 118 Wn.2d at 85-96 (addressing the appropriate standard of causation in retaliation cases); *E-Z Loader Boat Trailers*, 106 Wn.2d at 906-07 (briefly stating "the concept of retaliation as prohibited by RCW 49.60.210 can only come about by the performance of an intentional act. Retaliatory conduct involves both motive and intent.").

Neither the Washington Court of Appeals or Washington Supreme Court has addressed the factual scenario presented here where a prospective employee alleges retaliation against a prospective employer for failing to hire the plaintiff based on the plaintiff's past discrimination lawsuit against a different employer. However, the existing body of law provides some principles relevant to the instant matter.

**First**, WLAD is required to be interpreted liberally "in order to accomplish the

purposes of the law." *Marquis* 130 Wn.2d at 108. Additionally, nothing in WLAD shall "be construed to deny the right to any person institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights." RCW 49.60.020. While *Marquis* did not analyze RCW 49.60.210, the Washington Court of Appeals has cited *Marquis* to adopt a liberal interpretation approach to RCW 49.60.210(1). *See Currier v. Northland Services, Inc.*, 182 Wn. App. 733, 741-42 (2014); *Galbraith v. TAPCO Credit Union*, 88 Wn. App. 939, 949 (1997). While a broad interpretation does not *per se* resolve the issue of the scope of RCW 49.60.210(1), it does lend support to expanded protection.

**Second**, the Washington Court of Appeals has rejected the argument that retaliation claims are limited to those brought by employees against employers. *See Sambasivan v. Kadlec Medical Center*, 184 Wn. App. 567, 590-92 (2014) (allowing a retaliation claim brought by independent contractor); *Currier*, 182 Wn. App. at 744 (same); *Galbraith*, 88 Wn. App. at 949 (retaliation claim against credit union who expelled member for supporting discrimination lawsuit against the credit union); *see also*, *Malo v. Alaska Trawl Fisheries, Inc.*, 92 Wn. App. 927, 930 (1998) (declining to find "or other person" includes co-workers, but also stating the statute "is directed at entities functionally similar to employers").

As ESD 171 has pointed out, in none of those cases cited above did the protected activity and retaliation occur from different actors. In *Sambasivan*, the independent contractor filed a discrimination lawsuit against the hospital and the hospital thereafter retaliated against him. *See Sambasivan*, 184 Wn. App. at 572-73. In *Galbraith*, the credit union member submitted a declaration in support of an age and gender discrimination lawsuit against the credit union and the credit union retaliated by expelling him as a member. *See Galbraith*, 88 Wn. App. at 943-44.

Two cases present slightly different factual scenarios. In *Currier*, the plaintiff was an independent contractor who worked for the defendant as a truck driver. *Currier*, 182 Wn. App. at 738. The plaintiff reported abusive, racially discriminatory language of

another independent contractor to the defendant. (*Id*.). The defendant company terminated the plaintiff's contract two days later. (*Id*.). The Court of Appeals rejected the defendant's argument that upholding the finding for plaintiff "would effectively hold an employer liable for all discriminatory statements of all of its independent contractors or sales and supply vendors that happen to be on the employer's property." (*Id*. at 749). The Court of Appeals found the argument "begins with a faulty premise-that [defendant] is being held liable for [the other independent contractor's] racially discriminatory speech." (*Id*.). Instead, liability existed based on the defendant's "own retaliatory conduct against an independent contractor after he complained to" the defendant. (*Id*.); *see also*, (*id*. at n.37) ("Rather, the issue here is the alleged retaliatory conduct of [defendant] in response to [plaintiff's] complaint about it.").

The *Currier* case suggests an employer can be found liable of retaliation even where the protected activity was not against it. However, the fact remains in *Currier* the plaintiff was employed by the defendant and made his discrimination complaint to the defendant. This contrasts to the instant matter where ESD 171 never employed Plaintiff and was not a party to the discrimination lawsuit against Waterville School District. In *Currier*, there was a preexisting relationship wherein the discrimination and retaliation occurred.

In *Malo*, the plaintiff was a co-captain of a ship owned by the defendant. *Malo*, 92 Wn. App. at 928-29. The plaintiff confronted his co-captain about gender based discrimination towards other crew members. (*Id*. at 929). The plaintiff reported the co-captain's behavior to the defendant. (*Id*.). Later, the defendant chose to not renew the plaintiff's contract and retained the other co-captain. (*Id*.).

The plaintiff brought retaliation claims against, *inter alia*, the co-captain for the plaintiff's discharge, and argued the statute applied to his co-worker because RCW 49.60.210(1) prohibited retaliation by any "person." (*Id*.). The Court of Appeals rejected this argument, and found the inclusion of "or other person" in the statute is restricted by the preceding words "employer," "employment agency," and "labor union." (*Id*. at 930).

Because the co-captain "did not employ, manage or supervise" the plaintiff, he "was not in a position to discharge [plaintiff] or to expel him from membership in any organization." (*Id*.). The Court held "RCW 49.60.210 does not create personal and individual liability for co-workers." (*Id*. at 930-31). While the holding narrowed the scope of the statute, the Court also construed the statute broadly: "[t]he section, read as a whole, is directed at entities functionally similar to employers who discriminate by engaging in conduct similar to discharging or expelling a person who has opposed practices forbidden by RCW 49.60." (*Id*. at 930); *see Sambasivan*, 184 Wn. App. at 591.

ESD 171 relies heavily on the *Malo* case to argue retaliation claims "must be brought against **the employer** in the same employment where the alleged oppositional activity occurred." (ECF No. 136 at 14) (emphasis in original). Neither the *Malo* case nor any of the other cases cited above hold the retaliation and oppositional activity must be in the same employment. In each case, the opposition and retaliation occurred within the same relationship. Washington courts have not been asked to determine whether the activity and retaliation **must** be in the same relationship. It is unknown whether the Washington Supreme Court would extend claims to include retaliation by prospective employers against job applicants who contested discrimination from a different employer. The existing case law does not foreclose Plaintiff's claim, but neither does the language of the statute or existing case law clearly provide Plaintiff such a claim. The Washington Supreme Court has not spoken on the scope of RCW 49.60.210(1). All of the cases above were decided by the Washington Court of Appeals.

In light of the lack of Supreme Court authority on RCW 49.60.210, ESD 171 argued the Washington Supreme Court's discussion of retaliation in the workers' compensation statutes is analogous to WLAD retaliation. *See* (ECF No. 136 at 17); *Warnek v. ABB Combustion Engineering Services, Inc.*, 137 Wn.2d 450, (1999). The statute at issue in *Warnek* stated: "[n]o employer may discharge or in any manner discriminate against any employee because such employee has filed or communicated to the employer an intent to file a claim for compensation or exercises any rights provided

under this title." RCW 51.48.025(1). The court held "[a] former employee not rehired because the employee filed a workers' compensation grievance during the course of previous employment with the employer may not initiate a lawsuit for employment discrimination based upon wrongful discharge under RCW 51.48.025." *Warnek*, 137 Wn.2d at 455. In reaching this conclusion, the court rejected the plaintiff's argument which "would interpret the statute as providing for complaints by *ex-employees* and *former employees not rehired for employment because they filed for workers' compensation benefits during prior employment with the employer in another state*." (*Id.* at 457) (emphasis in original). The court held the statute "expressly provides for complaints by employees who have been discharged or otherwise discriminated against during the course of their employment." (*Id.*). Extending protection to former employees who were not rehired "would go beyond the statute's clear and unambiguous language." (*Id.*).

The workers' compensation statute is distinguishable. Unlike WLAD, the Industrial Insurance Act does not contain a broad statement of public policy calling for liberal interpretation or broad construction of rights. *See* RCW 49.60.020; *Bennett*, 113 Wn.2d at 927 (discussing the broad nature of WLAD compared to other statutes). Also, WLAD protects any "person" as opposed to an "employee." *Compare* RCW 49.60.210(1) (protecting "any person" from retaliation) *with* RCW 51.28.025(1) (protecting "any employee" from retaliation). The Washington Supreme Court based its decision in *Warnek* in part on the statutory language and legislative intent. *See Warnek*, 137 Wn.2d at 457. The text and intent of WLAD is different and broader. While the Supreme Court could come to the same conclusion on WLAD retaliation claims, it would require a separate analysis of WLAD in light of the particular textual language and statutory intent. *Warnek* does not speak to the scope of RCW 49.60.210(1).

### 2.    Legislative history

ESD 171 argues the legislative history of RCW 49.60.210(1) "does not suggest any intent on the part of the legislature to expand the retaliation claim to prospective

employers in a later job." (ECF No. 136 at 15). Focusing on the words "other person" in the statute, ESD 171 asserts when the words "other person" were added to the statute in 1985 it "was added in the list of entities that could be held liable for retaliation within the same job" and "was, at best, a housekeeping amendment." (ECF No. 136 at 16). ESD 171 argues it "was not intended to expand the protection of the statute beyond the same employment." (ECF No. 136 at 16). Plaintiff argues the legislative history of the 1985 amendment "expanded 'the coverage in the retaliation section...to apply to any person who has...opposed a practice of discrimination'" beyond discrimination and retaliation occurring within the same relationship. (ECF No. 146 at 25) (quoting ECF No. 138-2 at 3).

WLAD "was enacted in 1949 as an employment discrimination law." *Marquis*, 130 Wn.2d at 105. As originally enacted, WLAD "prohibited discrimination in employment on the basis of race, creed, color or national origin." (*Id*). The first major amendment to WLAD came in 1957, when WLAD "was amended to prohibit discrimination not only in employment but also in places of public resort, accommodation or amusement, and in publicly assisted housing because of race, creed, color or national origin." (*Id*.). Additionally, the 1957 amendment "provided that the right to be free from discrimination included but was not limited to the rights listed in the chapter." (*Id*. at 106). In 1973, WLAD was amended "to specifically prohibit discrimination in credit and insurance transactions." (*Id*.). Also in 1973, "sex, marital status, age, and disability were added as unlawful bases for discrimination." (*Id*.). While it has been amended since then, WLAD "remains substantially the same as it was following the 1973 amendments." (*Id*.).

Prior to 1985, the retaliation statute read: "[i]t is an unfair practice for any employer, employment agency, or labor union to discharge, expel, or otherwise discriminate against any person because he has opposed any practices forbidden by this chapter, or because he has filed a charge, testified, or assisted in any proceeding under this chapter." *See* (ECF No. 138-10 at 7). In 1985, the retaliation statute was amended, changing the jurisdiction language to read as follows: "the coverage in the retaliation

section is extended to apply to any person who has assisted the [Human Rights] Commission or opposed a practice of discrimination, thus bringing under Commission protection those persons who have opposed unfair practices in places of public accommodation and real property, credit, and insurance transactions." (ECF No. 138-2 at 3); (ECF No. 138-3 at 3-4); (ECF No. 138-8 at 3).

The legislative history shows an intent to expand the coverage of RCW 49.60.210(1). However, the inclusion of "or other person" was in relation to the other areas of discrimination WLAD covered through other amendments unrelated to employment. It did not speak to "employer" and whether that term encompasses prospective employers. Determining the scope of the term "employer" would require delving into the legislative history of WLAD's original enactment in 1949. Those documents are not part of the current record.

ESD 171 attempts to analogize the legislative intent of WLAD to a California anti-retaliation statute. *See* (ECF No. 136 at 16-17); *Jones v. Lodge at Torrey Partnership*, 72 Cal.Rptr.3d 624 (Cal. 2008). The California Supreme Court held the absence of legislative history for including the word "person" in the California statute showed the legislature did not intend to impose personal liability on non-employer individuals. *See Jones*, 72 Cal.Rptr.3d at 632. However, the *Jones* case is distinguishable because the issue in this matter is whether the statute encompasses prospective employers, either in the word "employer" or "other person." The instant matter does not raise the issue of whether WLAD retaliation can impose individual liability. For those reasons, the legislative history does not resolve whether WLAD was intended to allow retaliation claims against prospective employers.

### 3.    Other State and Federal Statutes

ESD 171 also argues other state statutes and federal laws show failure to hire retaliation claims against prospective employers are not actionable. (ECF No. 136 at 19-24). Plaintiff cites to Title VII of the Civil Rights Act to show failure to hire retaliation claims are actionable under WLAD. (ECF No. 146 at 24). The Washington Supreme

Court holds Title VII and cases interpreting that statute "are not helpful in determining the scope of RCW 49.60.030(1)." *Marquis*, 130 Wn.2d at 111. This is so because unlike WLAD, Title VII: (1) is limited to employment discrimination; (2) does not contain a broad statement of the right to be free of discrimination in other areas; and (3) there is "no provision in the federal law which sets forth the equivalent of the broad language of RCW 49.60.030(1) and there is no statutory provision requiring liberal construction in order to accomplish the purposes of the Act." (*Id.* at 110-11).

Plaintiff argues WLAD includes failure to hire claims because if anything, it is broader than Title VII. The text of the Title VII retaliation provision is illustrative: "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or **applicants for employment**... because he has opposed any practice made unlawful employment by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). Title VII specifically protects job applicants from retaliation based on its text.

RCW 49.60.210(1) does not specifically provide protection for job applicants, unlike RCW 40.60.030(1) which states the right to be free from discrimination includes "[t]he right to **obtain** and hold employment with discrimination." RCW 49.60.030(1)(a) (emphasis added). Other provisions of WLAD explicitly state they apply to job applicants or hiring. *See* RCW 49.60.172(1) ("No person may require an individual to take an HIV test... as a condition of **hiring**...") (emphasis added); RCW 49.60.172(2) ("No person may discharge or **fail or refuse to hire** any individual..." based on HIV status) (emphasis added); RCW 49.60.180(1) (stating it is an unfair practice "[t]o **refuse to hire** any person" based on their protected status) (emphasis added); RCW 49.60.180(2) (defining an unfair practice to include "[t]o discharge **or bar any person from employment**") (emphasis added); RCW 49.60.180(4) (prohibiting employers from "mak[ing] any inquiry **in connection with prospective employment**" regarding a person's protected status) (emphasis added).

The fact the Washington Legislature explicitly extended protection to job applicants and prospective employment on no less than six occasions within WLAD could suggest that by its silence the Legislature did not intend for job applicants to receive protection under RCW 49.60.210(1). Had the Legislature intended for prospective employment to be covered within the codified liberal interpretation of WLAD, specifically protecting job applicants in the statutes cited above would be redundant and unnecessary. *See Veit, ex rel. Nelson v. Burlington Northern Sante Fe Corp.*, 171 Wn.2d 88, 113 (2011) ("the rule against surplusage... requires this court to avoid interpretations of a statute that would render superfluous a provision of the statute"). If RCW 49.60.210(1) has been extended to prospective job applicants, this determination should be made by the State of Washington courts, not this court.

ESD 171 cites to cases interpreting the Fair Labor Standards Act to show the Fair Labor Standards Act does not allow retaliation claims brought by job applicants against prospective employers. (ECF No. 136 at 23) (citing cases). However, the Fair Standards Labor Act protects "any employee" from retaliation, whereas WLAD protects "any person" from retaliation. *See* 29 U.S.C. § 215(a)(3); RCW 49.60.210(1); *Darveau v. Detecon, Inc.*, 515 F.3d 334, 340 (4th Cir. 2008); *Glover v. City of North Charleston, S.C.*, 942 F. Supp. 243, 245 (D. S.C. 1996); *Harper v. San Luis Valley Regional Medical Center*, 848 F. Supp. 911, 913 (D. Col. 1994).

The various statutes and rulings from other jurisdictions cited by ESD 171 fail to resolve the scope of RCW 49.60.210. This court does not conclude RCW 49.60.210(1), as a matter of law, prohibits claims by prospective employees against subsequent prospective employers. Therefore, the court does not grant ESD 171 judgment as a matter of law. However, in light of the fact the scope of RCW 49.60.210(1) is unclear, the court will grant certification of the question of local law to the Washington State Supreme Court. *See* RCW 2.60.030(1). Accordingly, ESD 171's Motion on this issue is Reserved pending resolution of the state law question by the Washington Supreme Court.

**4.    Certification to the Washington Supreme Court**

Under Washington law, a federal court may certify a question of state law to the Washington Supreme Court when the federal court determines "it is necessary to ascertain the local law of this state in order to dispose of such proceeding and the law has not been clearly determined." RCW 2.60.020. Certification "may be invoked by a federal court upon its own motion or upon the motion of any interested party." RCW 2.60.030(1). "Certificate procedure costs shall be equally divided between plaintiff and defendant, subject to reallocation as between or among the parties by the federal court involved." RCW 2.60.030(3).

In its Motion, ESD 171 requests "certification of the state law issue to the Washington State Supreme Court." (ECF No. 136 at 1). Plaintiff opposes certification, but if certification is granted, Plaintiff requests the court "make ESD 171 bear the entire procedural costs per RCW 2.60.030(3) and pay Plaintiff's attorneys' fees." (ECF No. 146 at 27). In its Reply, ESD 171 argues Plaintiff provided no basis for reallocating costs. (ECF No. 147 at 10). Additionally, ESD 171 asserts the statute does not provide for attorneys' fees. (ECF No. 147 at 10).

Because the court finds the issue of whether RCW 49.60.210(1) protects job applicants from retaliation by prospective employers is unclear but necessary to resolve ESD 171's Motion, certification is appropriate. The court finds no reason to reallocate costs of certification in this matter. The parties shall divide the costs as directed by statute.

The court declines Plaintiff's request to prospectively award certification attorneys' fees to counsel. "In Washington, '[a]ttorney fees may be recovered only when authorized by statute, a recognized ground of equity, or agreement of the parties.'" *Wiley v. Rehak*, 143 Wn.2d 339, 348 (2001) (quoting *Perkins Coie v. Williams*, 84 Wn. App. 733, 742-43 (1997)) (brackets in original). The statute cited by Plaintiff only contemplates costs, which do not include attorneys' fees. *See Magnussen v. Tawney*, 109 Wn. App. 272, 275 (2001). The court will separately issue an Order certifying the local law question to the Washington State Supreme Court.

**C.    Sufficiency of Evidence**

ESD 171 argues even if the court finds the retaliation claim exists as a cause of action against prospective employers, Plaintiff failed to present substantial evidence to show Plaintiff's lawsuit against the Waterville School District was a substantial factor in ESD 171's decision to not hire Plaintiff for the Math-Science Specialist position. (ECF No. 136 at 24-29).

"A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). "In making this determination, the court must not weigh the evidence, but should simply ask whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Harper v. City of Los Angeles*, 533 F.3d 1010, 1021 (9th Cir. 2008). The court must "view all evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the favor of the non-mover, and disregard all evidence favorable to the moving party that the jury is not required to believe." (*Id*.). "Nevertheless, a reasonable inference 'cannot be supported by only threadbare conclusory statements instead of significant probative evidence.'" *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009). Judgment as a matter of law "is appropriate when the jury could have relied only on speculation to reach its verdict." (*Id*. at 802-03).

As instructed by the court, to find for Plaintiff on the retaliation claim, the jury had to find Plaintiff proved: (1) Plaintiff previously filed a claim of race discrimination against the Waterville School District; (2) Plaintiff applied for the Math-Science position; (3) Plaintiff was not hired for the Math-Science position; (4) "[a] substantial factor in the decision of ESD 171 to not hire Plaintiff Zhu was the fact of his prior claim of race discrimination against the Waterville School District"; and (5) Plaintiff was damaged as a result of the retaliation by ESD 171. (ECF No. 102 at 6).

ESD 171 disputes that Plaintiff met his burden of proof on the fourth element. "A 'substantial factor' means a significant motivating factor in bringing about an employer's

decision. A 'substantial factor does not mean the only factor or the main factor in the challenged act or decision." (ECF No. 102 at 9); WPI 330.01.01. The Washington Supreme Court has stated "the concept of retaliation as prohibited by RCW 49.60.210 can only come about by the performance of an intentional act. Retaliatory conduct involves both motive and intent." *E-Z Loader Boat Trailers*, 106 Wn.2d at 906-07. "To show retaliation based on protected activity, a plaintiff must provide evidence that the individuals he alleges retaliated against him knew of his protected activity." *Martin v. King County*, 194 Wn. App. 795, 818 (2016) (citing *Currier*, 182 Wn. App. at 746-47). Judgment as a matter of law on WLAD retaliation claims are appropriate where the evidence does not show the individuals allegedly committing the retaliation "both knew of his protected activity and, afterward, took" retaliatory action. *See* (*id*. at 819).

ESD 171 argues there is no evidence showing each member of the hiring committee knew of Plaintiff's lawsuit, and consequently, could not have used the Waterville lawsuit as a substantial factor to retaliate against Plaintiff. *See* (ECF No. 136 at 6-7). ESD 171 also argues the fact the jury rejected the race discrimination claim precludes a finding of retaliation because "[i]t is illogical to assume that the jury could accept the testimony of these witnesses regarding race and nationality but reject the same witnesses' testimony on the subject of retaliation." (ECF No. 136 at 26).

This second argument fails because ESD 171 painted the jury's options as false alternatives–the jury must necessarily accept or reject testimony as a whole–when in fact the jury could have accepted some of the testimony while finding other portions not credible. The jury found Plaintiff's race and nationality were not a substantial factor in the decision to not hire him. Such a finding does not prohibit the jury from finding retaliation was a substantial factor. Contrary to ESD 171's arguments, the jury was never asked to find whether Hickman was the most qualified candidate. The jury was only asked to find whether discrimination or retaliation were substantial factors in the hiring decision.

Plaintiff argues he provided substantial evidence consistent with the court's Jury

Instructions and ESD 171 never objected to those instructions. (ECF No. 146 at 6-8). Accordingly, Plaintiff argues, "the Court should focus on whether Plaintiff submitted evidence consistent with the instruction to which ESD 171 stipulated." (ECF No. 146 at 7). The cases Plaintiff cites are not on point because they address a parties' challenge to a jury instruction. *See Costa v. Desert Palace, Inc.*, 299 F.3d 838 (9th Cir. 2002); *Snake River Valley Elec. Ass'n v. PacificCorp*, 357 F.3d 1042, 1052 (9th Cir. 2004).

ESD 171 has challenged the sufficiency of the evidence, not the wording of the retaliation instruction. *See Costa*, 299 F.3d at 859 (addressing the sufficiency of the evidence challenge apart from challenges to jury instructions and framing the discussion on the law, not the specific wording of the jury instruction). It is unclear if Plaintiff argues the jury instruction is the only law that should be considered. It is appropriate for the court to consider relevant case law in determining a sufficiency challenge, so to the extent Plaintiff argued the jury instructions are dispositive statements of the law, he is mistaken.

Plaintiff argues he "submitted strong and substantial evidence" showing the Waterville lawsuit was a substantial factor in the decision to not hire him. (ECF No. 146 at 9-10). Citing federal case law, Plaintiff categorized his circumstantial evidence as: (1) the proximity in time between his lawsuit's settlement and the decision to not hire him for the Math-Science position; (2) "inconsistencies" relating to the anonymously produced screening matrix and the committee's alleged indifference to Plaintiff during his interview despite him being the first to interview; (3) Plaintiff's superior job qualifications to Hickman; and (4) "deviation from workplace procedures" regarding ESD 171's noncompliance with federal equal opportunity laws, McBride's failure to investigate Plaintiff's complaint against Hickman, and ESD 171 expert witness Debra Howard stating ESD 171 did not follow proper protocol in its interview process. (ECF No. 146 at 10-20).

These categories of evidence may support a finding of retaliation in general. *But see*, *Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1197-98 (9th

Cir. 2003) (holding on Title VII retaliation claims, "the fact that [the defendants] hired less qualified applicants does not give rise to an inference that they were aware of [plaintiff's] protected complaints"). At trial, the evidence categorized above was presented to the jury and the jury could reasonably infer that evidence showed pretext for ESD 171's proffered reasons for not hiring Plaintiff. It is unnecessary to produce direct evidence because circumstantial evidence "is typical in these retaliation cases." *Burchfiel v. Boeing Corp*., 149 Wn. App. 468, 482 (2009); *Currier*, 182 Wn. App. at 746-47 ("Because employers rarely will reveal they are motivated by retaliation, plaintiffs ordinarily must resort to circumstantial evidence to demonstrate retaliatory purpose") (citation and quotation marks omitted). This conclusion is supported by the testimony of several witnesses, discussed below.

Superintendent McBride testified he was aware of Plaintiff's lawsuit against the Waterville School District and "read a newspaper article about the settlement" of the Waterville lawsuit. (ECF No. 129 at 35-36). Superintendent McBride testified to the process of selecting a candidate to fill positions at ESD 171. (ECF No. 129 at 52-53). The hiring committee conducted interviews and provided a recommendation to him which indicated the number of applicants interviewed and their consensus as top pick. (ECF No. 129 at 52-53). Superintendent McBride took the recommendation forward to the board, who acts on the recommendation. (ECF No. 129 at 53). Superintendent McBride stated he recommended Andrew Hickman for the Math-Science Specialist position "based on the recommendation of the hearing -- of the Interview Committee." (ECF No. 129 at 53). Although Superintendent McBride was not part of the interview process, it is clear he was aware of the Waterville lawsuit. Based on his testimony, the jury could find Superintendent McBride knew of Plaintiff's lawsuit, and reject his testimony stating he made the recommendation to hire Hickman based on the committee's recommendation to do the same. Additionally, Plaintiff submitted evidence showing committee members were aware of Plaintiff's lawsuit against the Waterville School District.

Suzanne Reister testified to seeing information about Plaintiff's lawsuit against the

Waterville School District in the local newspaper. *See* (ECF No. 118 at 22). She testified regarding her recollection of what she saw in the newspaper: "[a]ll I remember it stating was that there was a lawsuit. And that was -- that there were some issues with his employment. And that was the only thing that was in that article." (ECF No. 118 at 83-84). She also testified there was a 15 minute meeting prior to the first interview for the Math-Science Specialist position with the other committee members pursuant to her standard practice. (ECF No. 118 at 34). The purpose of the meeting is to "talk about fairness; objectivity; how we're going to ask the questions; how to keep the notes on the interview -- on the interview notes themselves; and our expectation that we are providing an opportunity that is open and fair for every candidate." (ECF No. 118 at 35). The jury could reasonably infer she not only knew of the lawsuit, but discussed it with the other panelists at this meeting, notwithstanding her denying the Waterville lawsuit had anything to do with the hiring decision.

Plaintiff testified he told committee member Mary Jane Ross in the summer of 2011 he "had a pending federal race discrimination and retaliation lawsuit against the Waterville School District." (ECF No. 130 at 20). He also testified he told Ross in June 2012 he settled the Waterville lawsuit and was applying for the ESD 171 Math-Science Specialist position. (ECF No. 130 at 20-21). Ross testified she had conversations with Plaintiff over time regarding his issues with other individuals at Waterville. *See* (ECF No. 119 at 13). Based on the testimony of both Ross and Plaintiff, the jury could reasonably conclude Ross knew about the Waterville lawsuit and used it as a substantial factor in the decision to recommend Hickman, rather than the Plaintiff.

Sally Ryan, another ESD 171 employee who was not involved in the Math-Science interview process, testified she was present during a settlement conference of the Plaintiff's Waterville lawsuit. (ECF No. 131 at 7). She testified she also worked as the Business Manager for the Waterville School District and was present at the settlement conference at the request of the Waterville superintendent. (ECF No. 131 at 6-7). Ryan stated she "did not talk to anybody about [the Waterville lawsuit]. You know, the results

were in the newspaper . But I did not personally talk to anybody, really, about any of what went on." (ECF No. 131 at 8). Ryan explained why she did not talk to people at ESD 171 about the settlement conference: "I just had no real reason to talk to them about it. You know, as I said, it was in the newspaper, so they knew it had happened." (ECF No. 131 at 8-9).

Plaintiff testified that at the end of the interview, he handed out a number of documents and gave a presentation to the panelists, during which the panelists appeared "indifferent" and "impatient." (ECF No. 130 at 33). Plaintiff stated he based this observation off of "their body language. They frown. They shrug their shoulders. They didn't -- None of them even took a note of anything I was presenting or anything I was saying." (ECF No. 130 at 33). When asked by counsel if his perception of the panelists was consistent throughout the entire interview, Plaintiff answered "Yes. Their body language and actions gave me the message. How long have I -- how long do we have to deal with this guy? Let's just get it over with." (ECF No. 130 at 33). He left the interview with the "impression that this whole interview with me is a fake." (ECF No. 130 at 33-34).

The jury could have reasonably concluded, based on the testimony of Plaintiff and Ryan, Plaintiff's lawsuit against Waterville was common knowledge within ESD 171, and was a substantial factor in the decision to not hire him. Two of the four panelists admitted they knew about the Waterville lawsuit, and the jury could reasonably reject testimony stating the lawsuit had nothing to do with the decision to hire Hickman over Plaintiff. The evidence presented at trial, both direct and circumstantial, supports the jury verdict. Because the verdict is supported by substantial evidence, the Motion for Judgment as a Matter of Law on this issue must be Denied..

**D.    New Trial**

ESD 171 requested the court alternatively to grant a new trial. (ECF No. 136 at 29-34).

"Unlike with a Rule 50 determination, the district court, in considering a Rule 59

motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). The court can grant a new trial under Fed.R.Civ.P. 59 "on any ground necessary to prevent a miscarriage of justice." (*Id.*); *see Molski*, 481 F.3d at 729 (allowing a new trial if the verdict is against the clear weight of the evidence). The Ninth Circuit "afford[s] considerable deference to the district court's new trial decision and will not overturn the district court's decision to grant a new trial absent an abuse of discretion." *Experience Hendrix*, 762 F.3d at 842. The court abuses its discretion "only when the district court reaches a result that is illogical, implausible, or without support in the inferences that may be drawn from the record." *Kode v. Carlson*, 596 F.3d 608, 612 (9th Cir. 2010).

The court presided over the trial in this matter and is familiar with the evidence, testimony, and demeanor of the witnesses. This case was based largely on circumstantial evidence, often inherently difficult to prove. While the evidence in support of Plaintiff's claims was by no means strong, the verdict did not go against "the clear weight" of the evidence. This court will not overturn the verdict merely because the evidence was circumstantial or subject to more than one conclusion. Accordingly, the request for a new trial is Denied.

**E.    Objections to Jury Instructions**

Lastly, ESD 171 argues the court erred by failing to give three of its proposed instructions: (1) Defendant's First Supplemental Instruction (ECF No. 100) stating the jury should disregard any evidence related to the dismissed blacklisting claim; (2) Defendant's Proposed Instruction 23 (ECF No. 57) stating the employer, not the jury, has the right to decide which candidate is most qualified; and (3) Defendant's Proposed Supplemental Instruction No. 39 (ECF No. 69) setting forth the elements of the WLAD retaliation claim including the "oppositional" element. (ECF No. 136 at 35).

Plaintiff argues ESD 171 did not timely object to the failure to give those proposed

instruction. (ECF No. 146 at 26). Plaintiff asserted the court should consider the instructional error waived. (ECF No. 146 at 26).

In Reply, ESD 171 argues it made its objections "during jury instruction conferences with the court." (ECF No. 147 at 9). ESD 171 did not cite to any part of the record or transcript to support this statement. ESD 171 asserts the court "was well aware of the three proposed jury instructions that it decided not to give." (ECF No. 147 at 9). ESD 171 argues its objections were "sufficient to allow the Court an opportunity to avoid error." (ECF No. 147 at 10).

In order to make a proper objection to the failure to give proposed jury instructions, the party "must do so on the record, stating distinctly the matter objected to and the grounds for the objection." Fed.R.Civ.P. 51(c)(1). An objection is timely if it is made when the court affords an opportunity to object on the record outside the presence of the jury or if no such opportunity was given, "the party objects promptly after learning that the instruction or request will be, or has been, given or refused." Fed.R.Civ.P. 51(c)(2). ESD 171 did not state what relief it was seeking regarding the jury instructions. Because ESD 171 did not cite to any part of the record where it made objections to the failure to give the three instructions at issue, it is impossible to find ESD 171 properly objected and preserved its argument.

The First Supplemental Instruction was submitted by ESD 171 after the court dismissed the blacklisting claim. ESD 171 did not cite the record of the court's exchange with counsel outside the presence of the jury. During the discussion, the court considered the proposed instruction and declined to give it because doing so would bring unwarranted attention to the dismissed claim.

Proposed Instruction No. 23 was based on a federal district court case from the Southern District of New York. *See* (ECF No. 57 at 27); *Logan v. St. Luke's Hosp. Center*, 428 F. Supp. 127, 131 (S.D. N.Y. 1977). The language ESD 171 used was not taken from jury instructions or a discussion about jury instructions, because the *Logan* court was addressing federal discrimination claims, not jury instructions. *See* (*id.*).

Because the cited case was from out of this district and not binding, and also did not address WLAD or jury instructions, the court declined to give this instruction. It is unclear whether ESD 171 ever objected to the failure to give this instruction.

The third instruction at issue set forth the elements of a WLAD retaliation claim. *See* (ECF No. 69 at 6). ESD 171 appears to be arguing the court erred by not setting forth the "oppositional" element of WLAD retaliation claims. *See* (ECF No. 136 at 35). However, at trial, ESD 171 did not contest that Plaintiff was engaged in protected activity by suing the Waterville School District for race discrimination. It is unclear how this instruction would have had any impact on the jury's deliberations because the only difference from the court's given Jury Instructions and the requested instruction was an element not at issue. It is also unclear whether ESD 171 ever objected to the failure to give this instruction.

### III.    Conclusion

The scope of RCW 49.60.210(1) is not clear. Whether Plaintiff's retaliation claim is encompassed by the statute and within the broad policy statements of WLAD is an open question. Plaintiff submitted sufficient evidence to uphold the jury's verdict if the statute is interpreted in his favor. The court declines to order a new trial in this matter as the verdict was not against the clear weight of the evidence. For these reasons, the court Denies ESD 171's Motion, but will certify the question of law to the Washington Supreme Court.

**IT IS HEREBY ORDERED**:

The Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial (ECF No. 136) is **RESERVED IN PART AND DENIED IN PART** as set forth herein.

**IT IS SO ORDERED**. The Clerk is hereby directed to enter this Order and furnish copies to counsel.

Dated December 23, 2016.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH

SENIOR UNITED STATES DISTRICT JUDGE